# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARK RING,                          :
      Petitioner          :          CIVIL ACTION NO. 3:15-CV-0458
                           :          (Judge Nealon)
    v.                           :
                           :
SUPERINTENDENT JAMEY P.             :
LUTHER,                             :
      Respondent          :

## MEMORANDUM

On March 6, 2015, Petitioner, Mark Ring, initiated the above-captioned action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254, while he was confined at the State Correctional Institution-Laurel Highlands, Somerset, Pennsylvania ("SCI-Laurel Highlands").[1]  (Doc. 1).  He filed an amended petition and supplement on April 20, 2015.  (Docs. 10, 11).  Petitioner challenges his guilty plea and sentence on eleven (11) grounds of relief and seeks his "[i]mmediate release, reversal of conviction, dismissal of charge, withdrawal of guilty plea, [and] new trial."  (Doc. 10, pp. 5-14); (Doc. 11).  For the reasons that follow, the petition will be dismissed as untimely filed.

## I.     BACKGROUND

On March 15, 2007, pursuant to a negotiated plea agreement, Petitioner pled

---

[1] After the filing of his petition, Petitioner was transferred to the State Correctional Institution, Waymart, Pennsylvania ("SCI-Waymart").  (Doc. 25).  As a result, the proper Respondent in this action is the Superintendent of SCI-Waymart, Jack Somners.  (Id.).

guilty to one (1) count of murder in the third degree, 18 Pa. C.S.A. § 2502(c).

(Doc. 17-1, pp. 40-41, 84-87); Commonwealth v. Ring, No. CP-40-CR-4097-2006

(Luzerne Cnty. C.P.).  On April 26, 2007, Petitioner was sentenced to twelve (12)

to twenty-four (24) years of incarceration.  (Doc. 17-1, p. 49).  Post-sentence

motions were not filed, nor was a direct appeal taken.  (Doc. 17-2, p. 29);

Memorandum at p. 2, Commonwealth v. Ring, No. 1118 MDA 2008 (Pa. Super.

Ct. Mar. 31, 2010).  As a result, his sentence became final on May 29, 2007.  See

Id.; 42 Pa. C.S.A. § 9545(b)(3); PA. R. APP. P. 903; PA. R. CRIM. P. 720(A)(3).

On April 9, 2008, Petitioner filed a timely pro se Post Conviction Relief Act

("PCRA") petition.  (Doc. 17-1, p. 87); Opinion at p. 6, Ring, No. CP-40-CR-

4097-2006 (Luzerne Cnty. C.P. Nov. 21, 2008).  In that petition he argued that as

a result of trial counsel's ineffective assistance, Petitioner's guilty plea was not

knowingly, voluntarily, and intelligibly made.  (Doc. 17-1, pp. 87-88).  On May

28, 2008, a PCRA hearing was held addressing the "propriety of" Petitioner's

guilty plea.  (Doc. 17-2, p. 21); Memorandum at p. 2, Ring, No. 1118 MDA 2008.

The PCRA court heard testimony from Petitioner and his two (2) trial attorneys.

(Doc. 17-1, p. 87).  At the conclusion of the hearing, the court found that

Petitioner's claims of ineffective assistance lacked merit and, thus, dismissed the

PCRA petition.  (Id. at pp. 87-88).

2

On June 26, 2008, Petitioner timely appealed the dismissal of his PCRA petition to the Pennsylvania Superior Court.  (Doc. 17-1, p. 88); Ring, No. CP-40-CR-4097-2006.  On July 7, 2008, an order was issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) providing Petitioner with twenty-one (21) days to file a concise statement of errors complained of on appeal.  Id.  On July 24, 2008, Petitioner's counsel submitted a statement of intent to file an Anders/McClendon brief indicating that Petitioner's appeal was meritless.  Id.

On March 30, 2009, while Petitioner's appeal concerning the disposition of his first PCRA petition was pending before the Pennsylvania Superior Court, he filed a second PCRA petition.  (Doc. 17-2, p. 96); Memorandum at p. 2, Commonwealth v. Ring, No. 718 MDA 2014 (Pa. Super. Ct. Jan. 13, 2015); Ring, No. CP-40-CR-4097-2006.  A decision by the PCRA court on Petitioner's second PCRA petition was deferred until completion of his appeal regarding his first PCRA petition.  Id.

On March 31, 2010, the Pennsylvania Superior Court affirmed the PCRA court's dismissal of Petitioner's first PCRA petition.  (Doc. 17-2, p. 35); Memorandum at p. 8, Ring, No. 1118 MDA 2008.  On April 30, 2010, Petitioner filed a petition for allowance of appeal with the Pennsylvania Supreme Court. Petition for Allowance of Appeal, Ring, No. 1118 MDA 2008 (Pa. Super. Ct. Apr.

3

30, 2010).  On September 9, 2010, the Pennsylvania Supreme Court denied

Petitioner's request for allowance of appeal.  (Doc. 17-2, p. 36); Order,

Commonwealth v. Ring, No. 305 MAL 2010 (Pa. Sept. 9, 2010).

On January 7, 2011, Petitioner filed a petition for writ of mandamus and/or

extraordinary relief with the Pennsylvania Supreme Court.  Ring v. Court of

Common Pleas of Luzerne Cnty., No. 7 MM 2011 (Pa. Jan. 7, 2011).  That petition

was denied by the Pennsylvania Supreme Court on September 21, 2011.  Ring,

No. 7 MM 2011 (Pa. Sept. 21, 2011).

On November 14, 2011, Petitioner filed an amended second PCRA petition.

(Doc. 17-2, p. 97); Memorandum at p. 3, Ring, No. 718 MDA 2014.  On October

8, 2013, in response to Petitioner's motion for disposition, the PCRA court

appointed him counsel.  Id.  On December 12, 2013, Petitioner's counsel filed a

no-merit letter and a petition to withdraw as counsel.  Id..  The no-merit letter

indicated that Petitioner's:

> [second] PCRA [petition] is filed based upon "the corruption in
> Luzerne County" during the time of his guilty plea and
> sentencing. [Petitioner's] case was not heard by any Judge
> implicated in any corruption scandal, nor was [Petitioner]
> represented by an attorney implicated in any corruption
> scandal.  Further, it is not alleged that his case was in any[] way
> related to or effected by the "corruption."
>     [Petitioner's] amended PCRA [petition] and brief assert
> that, because of the "corruption," [Petitioner's] guilty plea was

> not knowing, voluntary and intelligent.  Basically, [Petitioner]
> reasserts the issues raised in [his first] PCRA [petition].  These
> issues were previously litigated before[,] and decided by the
> Court of Common Pleas and affirmed by the Superior Court.

(Doc. 17-2, p. 97); Memorandum at p. 3, Ring, No. 718 MDA 2014.  The PCRA

court found that Petitioner's counsel complied with the Turner/Finley

requirements and, therefore, permitted him to withdraw as Petitioner's counsel.

Id.  The PCRA court, pursuant to Pennsylvania Rule of Criminal Procedure 907,

gave Petitioner notice of its intent to dismiss his second PCRA petition without a

hearing.  (Doc. 17-2, p. 98); Memorandum at p. 4, Ring, No. 718 MDA 2014.  The

PCRA court stated in the Rule 907 notice that Petitioner was not entitled to relief

because his claims that his trial counsel provided ineffective assistance and an

unlawfully induced guilty plea were previously litigated, and his second PCRA

petition was untimely and jurisdictionally time-barred.  Id.  Petitioner then filed an

objection to the Rule 907 notice.  Id.  On March 18, 2014, the PCRA court

dismissed Petitioner's second PCRA petition.  Id.

Petitioner filed a timely notice of appeal.  Id.  On January 13, 2015, the

Pennsylvania Superior Court affirmed the dismissal of Petitioner's second PCRA

petition. (Doc. 17-2, p. 102); Memorandum at p. 8, Ring, No. 718 MDA 2014.  In

particular, the Superior Court found Petitioner's second PCRA petition was

facially untimely "because his judgment of sentence became final more than one year prior, in May 2007." (Doc. 17-2, p. 100); Memorandum at p. 6, <u>Ring</u>, No. 718 MDA 2014.  Although Petitioner did not raise any of the exceptions to the PCRA's time bar in his second PCRA petition, the Superior Court went on to consider Petitioner's argument that he qualifies for the "after-discovered facts" exception, which was presented in his brief in support of his <u>pro se</u> amended second PCRA petition.  <u>Id.</u>  Petitioner argued that "the convictions concerning Judges Conahan and Ciavarella constituted unknown facts that excused his late filing."  <u>Id.</u>  However, the Superior Court found that Petitioner "did not attempt to explain how the former judges' criminal conduct, which involved only juvenile court cases, had any impact upon his case."  <u>Id.</u>  As a result, the Superior Court determined that Petitioner's claim that the after-discovered evidence exception to the PCRA jurisdictional time bar was "unsubstantiated." (Doc. 17-2, p. 101); Memorandum at p. 7, <u>Ring</u>, No. 718 MDA 2014.

On March 6, 2015, the above-captioned action was instituted by the filing of Petitioner's petition for writ of habeas corpus under 28 U.S.C. § 2254.  (Doc. 1). On April 20, 2015, Petitioner replaced his initial petition when he filed an amended petition.  (Doc. 10).  On that same date, Petitioner filed a supplement to his amended petition.  (Doc. 11).

Petitioner advances eleven (11) grounds for relief in his amended petition. (Docs. 10, 11).  First, Petitioner contends that he received ineffective assistance of counsel, namely that his trial counsel provided "erroneous lay interpretation of autopsy report," which "caused Petitioner to misapprehend material facts which could or might have been corrected regarding bullet wound locations" and resulted in guilty plea that was not voluntary, knowing, or intelligent.  (Doc. 10, p. 5). Second, Petitioner argues that his counsel "withheld critical and material evidence."  (Id. at p. 6).  Specifically, Petitioner asserts, inter alia, that "[d]efense counsel withheld conclusive DNA lab reports regarding items analyzed and not analyzed and having an exculpatory potential regarding main prosecution witness' claims petitioner maliciously attacked her and decedent."  (Id.).  Petitioner claims that his counsel "failed also to pursue disposition of other alleged injury claims by main prosecution witness implicating petitioner and having an impeachment potential."  (Id.).  He also argues that further DNA testing of a "wood spindle," which he asserts was relevant to his self-defense claim, "would have changed the outcome by providing proof decedent was in possession of the wood spindle . . . ." (Doc. 11, p. 1).  Third, Petitioner argues that his counsel "[i]nduced plea utilizing deceptive advice in lieu of a viable defense."  (Doc. 10, p. 8).  Specifically, Petitioner claims that counsel's "advice to [him] that juries are stupid and would

infer legal malice from use of deadly weapon on vital organs resulting in most severe conviction and sentencing was unreasonable in light of viable defense and totality of circumstances," which includes "decedent's violent history." (Doc. 10, p. 8). Fourth, Petitioner claims he received ineffective assistance when he was provided with "[i]nadequate direct appeal consultation." (Id. at p. 9). Fifth, he argues that he received ineffective assistance of counsel because his trial counsel provided "[i]nadequate mitigation at sentencing." (Doc. 11, p. 3). Sixth, he claims he is entitled to habeas relief because there was an "[i]nadequate state corrective process." (Id.). Specifically, he asserts that "[c]ompetent appointed counsel [was] not available to enable indigent prisoner to make a meaningful case for post conviction relief." (Id. at pp. 3-4). Seventh, Petitioner argues that the "[p]rosecution failed to disclose exculpatory and impeaching evidence and knowingly presented false evidence." (Id. at p. 4). Eighth, he claims that there was "[p]rosecutorial/police misconduct." (Id. at p. 6). Ninth, Petitioner argues that the trial court erred in determining that "a factual basis to plea existed on conduct not constituting a criminal offense contrary to petitioner's self-defense assertions." (Id. at p. 7). Tenth, he claims that the trial court engaged in "misconduct." (Id. at p. 8). Eleventh, Petitioner states that the "[l]ower court dismissal of [his] [second] PCRA petition and appellate court affirming were an

unreasonable determination of facts and an unreasonable application of federal law." (Doc. 11, p. 9).

On June 11, 2015, Respondent filed a response to the amended petition. (Doc. 17).  On August 19, 2015, Petitioner filed a traverse and an accompanying appendix.  (Docs. 27, 28).  On October 22, 2015, the Court issued an Order staying the above-captioned action until the resolution of Petitioner's appeal from Commonwealth v. Ring, No. CP-40-CR-4097-2006 (Luzerne Cnty. C.P.).  (Doc. 33); Commonwealth v. Ring, No. 1238 MDA 2015 (Pa. Super. Ct.).  On May 25, 2016, Petitioner filed a notice that his appeal from Ring, No. CP-40-CR-4097-2006, had concluded.[2]  (Doc. 35); Memorandum, Ring, No. 1238 MDA 2015 (Pa. Super. Ct. Apr. 28, 2016).  The Court then lifted the stay on this action.  (Doc. 36). Therefore, the instant petition, having been fully briefed, is ripe for disposition. For the reasons set forth below, the petition for habeas corpus will be dismissed as untimely.

## II.   **DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets a statute of limitations period of one (1) year to apply for writ of habeas corpus

---

[2] Also on May 25, 2016, Petitioner filed a motion to compel Respondent to file briefs and exhibits not included in their response dated June 11, 2015.  (Doc. 34).  In light of the Court's decision herein, Petitioner's motion to compel will be dismissed as moot.

challenging state court action.  28 U.S.C. § 2244(d)(1).  "This period begins

running from 'the date on which the judgment became final by the conclusion of

direct review or the expiration of the time for seeking such review.'"  Fahy v.

Horn, 240 F.3d 239, 243 (3d Cir. 2001) (quoting 28 U.S.C. § 2244(d)(1); Morris

v. Horn, 187 F.3d 333, 337 (3d Cir. 1999)).  "However, the statute of limitations

may be statutorily tolled during '[t]he time during which a properly filed

application for State post-conviction relief or other collateral review with respect

to the pertinent judgment or claim is pending.'"  Id. (quoting 28 U.S.C. §

2244(d)(2); Morris, 187 F.3d at 337) (emphasis in original).  "The AEDPA statute

of limitations can only be statutorily tolled when a collateral petition for state

relief was 'submitted according to the state's procedural requirements, such as the

rules governing the time and place of filing.'"  Id. (quoting Morris, 187 F.3d at

338).  In regards to what constitutes "properly filed," the United States Court of

Appeals for the Third Circuit has stated the following:

> Thus, in the AEDPA Congress set forth the requirement that
> only a properly filed petition for state collateral relief can toll
> the statute of limitations for filing a federal habeas petition, and
> in Lovasz[ v. Vaughn,] 134 F.3d [146,] 148 [(3d Cir 1998)], we
> defined "properly filed" as being submitted in accordance with
> the state's procedural requirements.

Id. (emphasis in original).  "State petitioners therefore must file their state claims

promptly and properly under state law in order to preserve their right to litigate

constitutional claims that are more than one year old in federal court." <u>Fahy</u>, 240

F.3d at 243.  Additionally, "[a]n application for state collateral review is not

pending during the time a prisoner has to seek review of a decision by a state's

highest court by filing a petition for certiorari to the United States Supreme

Court." <u>Jenkins v. Superintendent of Laurel Highlands</u>, 705 F.3d 80, 85 n.5 (3d

Cir. 2013) (citing <u>Lawrence v. Florida</u>, 549 U.S. 327, 332 (2007)).

## A.   <u>Statutory Tolling</u>

As noted, Petitioner's conviction and sentence became final on May 29,

2007.  <u>See</u> (Doc. 17-2, p. 29); Memorandum at p. 2, <u>Ring</u>, No. 1118 MDA 2008;

<u>Ring</u>, CP-40-CR-4097-2006; 42 Pa. C.S.A. § 9545(b)(3); PA. R. APP. P. 903; PA.

R. CRIM. P. 720(A)(3).  On April 9, 2008, Petitioner filed a timely <u>pro se</u> Post

Conviction Relief Act ("PCRA") petition.  (Doc. 17-1, p. 87); Memorandum at p.

6, <u>Ring</u>, No. CP-40-CR-4097-2006 (Luzerne Cnty. C.P. Nov. 21, 2008).  On May

28, 2008, a PCRA hearing was held addressing the "propriety of" Petitioner's

guilty plea.  (Doc. 17-2, p. 21).  At the conclusion of the hearing, the court found

that Petitioner's claims of ineffective assistance lacked merit and thus, dismissed

the petition.  (Doc. 17-1, pp. 87-88); Memorandum at pp. 6-7, <u>Ring</u>, No. CP-40-

CR-4097-2006.

11

On June 26, 2008, Petitioner filed a timely notice of appeal concerning his first PCRA petition.  (Doc. 17-1, p. 88); Memorandum at p. 7, <u>Ring</u>, No. CP-40-CR-4097-2006.  On July 7, 2008, an order was issued pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) providing Petitioner with twenty-one (21) days to file a concise statement of errors complained of on appeal.  <u>Id.</u>  On July 24, 2008, Petitioner's counsel submitted a statement of intent to file an <u>Anders/McClendon</u> brief indicating that Petitioner's appeal was meritless.  <u>Id.</u>

On March 31, 2010, the Pennsylvania Superior Court affirmed the PCRA court's dismissal of Petitioner's first PCRA petition.  (Doc. 17-2, p. 35); Memorandum at p. 8, <u>Ring</u>, No.1118 MDA 2008.  On April 30, 2010, Petitioner appealed Superior Court's decision to the Pennsylvania Supreme Court.  Petition for Allowance of Appeal, <u>Commonwealth v. Ring</u>, No. 1118 MDA 2008 (Pa. Super. Ct. Apr. 30, 2010).  On September 9, 2010, the Pennsylvania Supreme Court denied Petitioner's request for allowance of appeal.  (Doc. 17-2, p. 36); Order, <u>Commonwealth v. Ring</u>, No. 305 MAL 2010 (Pa. Sept. 9, 2010).

Petitioner's first PCRA petition was "properly filed" and, thus, statutorily tolled the AEDPA's statute of limitations on April 9, 2008.  Notably, when Petitioner filed his first PCRA petition he had approximately forty-nine (49) days remaining to file a timely federal habeas petition.  However, Petitioner's first

PCRA petition can only statutorily toll the AEDPA's statute of limitations until

September 10, 2010, a day after the Pennsylvania Supreme Court denied

Petitioner's allowance of appeal.  See LaCava v. Kyler, 398 F.3d 271, 274 (3d Cir.

2005); Zimmerman v. Coleman, 2016 U.S. Dist. LEXIS 157224, at *3-4 (M.D. Pa.

Nov. 14, 2016) (Mariani, J.) ("'Pending,' however, does not include the period

during which a state prisoner may file a petition for writ of certiorari in the United

States Supreme Court from the denial of his state post-conviction petition.")

(citing Stokes v. District Attorney of the Cnty. of Philadelphia, 247 F.3d 539, 542

(3d Cir. 2001)).  Forty-nine days from September 10, 2010, would put the

expiration of his AEDPA limitations period on or around October 29, 2010.

Therefore, Petitioner may not rest solely on the statutory tolling of his first PCRA

petition because he filed his initial federal petition on March 6, 2015.  (Doc. 1).

As a result, Petitioner must establish that he is entitled to additional tolling of the

AEDPA's limitations period.

     The only other collateral proceeding Petitioner relies upon for tolling of the

AEDPA's statute of limitations is his second PCRA petition.  See (Doc. 27, pp. 4-

5).  However, as discussed below, his second PCRA petition fails to establish that

Petitioner is entitled to any additional statutory tolling.

     In Fahy, the Third Circuit Court of Appeals "has [] recognized that an

untimely PCRA petition does not toll the statute of limitations for filing a federal habeas corpus petition." Shirey v. Giroux, 2014 U.S. Dist. LEXIS 158695, at *4 (M.D. Pa. 2014) (Conaboy, J.) (citing Merritt v. Blaine, 326 F.3d 157, 165-66 & n.6 (3d Cir. 2003)).  The "AEDPA provides that the one-year period of limitation shall not run during '[t]he time during which a properly filed application for State post-conviction . . . review . . . is pending.'" Merritt, 326 F.3d at 167 (alteration and emphasis in original) (quoting 28 U.S.C. § 2244(d)(2)).  "The 'properly filed' phrase encompasses more than timeliness." Id.  "The Supreme Court stated in Artuz[ v. Bennett, 531 U.S. 4 (2000)], 'an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings,' including 'the time limits upon its delivery.'" Id. (quoting Artuz, 531 U.S. at 8).  Additionally, "[o]ur opinion in Fahy holds that we must look to state law to determine whether the state petition is 'properly filed.'" Id. (quoting Fahy, 240 F.3d at 243).  "But," the United States Court of Appeals for the Third Circuit has noted, "it is federal law that sends us to the state court." Id.

Petitioner's second PCRA petition was dismissed by the PCRA court because, inter alia, it was facially untimely and jurisdictionally time barred.  (Doc. 17-2, p. 98); Memorandum at p. 4, Ring, No. 718 MDA 2014.  That decision was then appealed to the Pennsylvania Superior Court.  Ring, No. 718 MDA 2014.  On

14

January 13, 2015, the Superior Court issued a non-precedential decision affirming the dismissal of Petitioner's second PCRA petition.  (Doc. 17-2, pp. 95-102); Memorandum, Ring, No. 718 MDA 2014.  Specifically, the Superior Court found Petitioner's second PCRA petition was facially untimely "because his judgment of sentence became final more than one year prior, in May 2007."  (Doc. 17-2, p. 100); Memorandum at p. 6, Ring, No. 718 MDA 2014.  However, although Petitioner did not raise any of the exceptions to the PCRA's time bar in his second PCRA petition, the Superior Court went on to consider Petitioner's argument that he qualifies for the "after-discovered facts" exception, which was presented in his brief in support of his pro se amended second PCRA petition.  Id.  Petitioner argued that "the convictions concerning Judges Conahan and Ciavarella constituted unknown facts that excused his late filing."  Id.  The Superior Court found that Petitioner "did not attempt to explain how the former judges' criminal conduct, which involved only juvenile court cases, had any impact upon his case." Id.  The Superior Court went on to find that Petitioner's claim that the after-discovered evidence exception to the PCRA jurisdictional time bar was "unsubstantiated."  (Doc. 17-2, p. 101); Memorandum at p. 7, Ring, No. 718 MDA 2014.  As a result, Petitioner's second PCRA petition was deemed untimely filed and, thus, was jurisdictionally time barred.  Id.  The Superior Court's

15

determination that Petitioner's amended second PCRA petition was untimely filed requires a finding here that it was not "properly filed" for purposes of AEDPA. See Merritt, 326 F.3d at 167-68; see also Pace v. DiGuglielmo, 544 U.S. 408, 413 (2005) ("In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception."); Gallawshew v. Kaufmann, 2016 U.S. Dist. LEXIS 95927, at *11 (E.D. Pa. July 21, 2016) ("The state courts determination that Petitioner failed to satisfy any of the exceptions set forth in the PCRA statute and the petition remained untimely, is a state law determination that is not reviewable by this court."), adpoted by, 2016 U.S. Dist. LEXIS 122048 (E.D. Pa. Sept. 8, 2016); Rowe v. Giroux, 2016 U.S. Dist. LEXIS 72715, at *17-19 (M.D. Pa. June 1, 2016) (Mehalchick, M.J.), adopted by, 2016 U.S. Dist. LEXIS 111975, at *14-15 (M.D. Pa. Aug. 23, 2016) (Caputo, J.).  As a result, Petitioner's second PCRA petition fails to provide any statutory tolling of the AEDPA's statute of limitations.  Consequently, Petitioner must establish that he is entitled to sufficient equitable tolling of the AEDPA's limitations period in order for his petition for a writ of habeas corpus to be considered timely filed.

## B. <u>Equitable Tolling</u>

As stated, in addition to statutory tolling, the AEDPA's limitations period

can also be equitably tolled.  See Fahy, 240 F.3d at 244.  Here, Petitioner argues

that, assuming statutory tolling is insufficient to render his petition timely filed,

equitable tolling is warranted under the circumstances.  See (Doc. 27, pp. 5-6).

The United States Court of Appeals for the Third Circuit has explained that

"'[t]here are no bright lines in determining whether equitable tolling is warranted

in a given case.'"  Sistrunk v. Rozum, 674 F.3d 181, 190 (3d Cir. 2012) (quoting

Pabon v. Mahanoy, 654 F.3d 385, 399 (3d Cir. 2011)).  "Nevertheless, 'courts

must be sparing in their use of equitable tolling,' and should do so 'only when the

principles of equity would make the rigid application of a limitation period

unfair.'"  Id. (internal citations omitted) (quoting Seitzinger v. Reading Hosp. &

Med. Ctr., 165 F.3d 236, 239 (3d Cir. 1999); Miller v. N.J. State Dep't of Corr.,

145 F.3d 616, 618 (3d Cir. 1998)).  "[A] litigant seeking equitable tolling bears the

burden of establishing two elements: (1) that he has been pursuing his claims

diligently; and (2) that some extraordinary circumstance stood in his way."  Pace,

544 U.S. at 418.

As for the diligence prong, to establish that he is entitled to equitable

tolling, Petitioner has to show that he was reasonably diligent in pursuing his

rights.  Id.  The reasonably diligent requirement "does not pertain solely to the

filing of the federal habeas petition, rather it is an obligation that exists during the

period appellant is exhausting state court remedies as well." LaCava, 398 F.3d at 277 (citing Jones v. Morton, 195 F.3d 153, 160 (3d Cir. 1999)).  "The language of the AEDPA itself indicates as much, with statutory tolling being limited to 'properly filed' applications for state post-conviction or other collateral relief." Id. (citing 28 U.S.C. § 2244(d)(2); Artuz, 531 U.S. 4; Lovasz v. Vaughn, 134 F.3d 146 (3d Cir. 1998)).

"The Supreme Court addressed reasonable diligence in Holland[ v. Florida, 130 S. Ct. 2549 (2010)], explaining that '[t]he diligence required for equitable tolling purposes is "reasonable diligence," . . . not "maximum feasible diligence."'" Pabon, 654 F.3d at 402 (second alteration in original) (quoting Holland, 130 S. Ct. at 2565).  The Third Circuit "has established a similar standard." Id.  In particular, the Third Circuit has stated that while "'[d]ue diligence does not require "the maximum feasible diligence,"' 'it does require reasonable diligence in the circumstances.'" Id. (quoting Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004)).  "The fact that a petitioner is proceeding pro se does not insulate him from the 'reasonable diligence' inquiry and his lack of legal knowledge or legal training does not alone justify equitable tolling." Ross v. Varano, 712 F.3d 784, 799-800 (3d Cir. 2013) (citing Brown v. Shannon, 322 F.3d 768, 774 (3d Cir. 2003); Doe v. Menefee, 391 F.3d 147, 177 (2d Cir. 2004)).

In <u>McKeithan v. Varner</u>, the Third Circuit addressed whether the petitioner was entitled to an evidentiary hearing on the issue of equitable tolling "under <u>Fahy</u>, 240, F.3d at 239; <u>Nara v. Frank</u>, 264 F.3d 310 (3d Cir. 2001); and <u>Miller</u>, <u>supra.</u>" 108 F. App'x 55, 58 (3d Cir. 2004).  In particular, the petitioner in <u>McKeithan</u> argued that he was entitled to an evidentiary hearing concerning equitable tolling because he "exercised reasonable diligence in the face of extremely adverse conditions . . . ." <u>Id.</u>  The Third Circuit, in affirming the district court's dismissal of the petition as time-barred, stated that:

> Critically, although there were periods in which [the petitioner] demonstrated diligence, [the petitioner] appeared to have filed nothing in state court between August 11, 1996, when he last inquired about his first PCRA petition, and January 16, 1997, when he filed his second PCRA petition.  Similarly, he filed nothing between February 25, 2000, when the Pennsylvania Supreme Court denied his petition for allocatur for his section PCRA claim, and August 14, 2000, when he filed his third PCRA petition (his "Motion to Correct Illegal Sentence").  In sum, [the petitioner] "has not alleged facts sufficient to show that 'sound legal principles as well as the interests of justice' demand pursuit of the 'sparing' doctrine of equitable tolling."

<u>Id.</u> at 59 (quoting <u>Robinson</u>, 313 F.3d at 143).

In <u>Darden v. Sobina</u>, the Third Circuit again addressed a petitioner's claim that he was entitled to equitable tolling.  477 F. App'x 912 (3d Cir. 2012).  In that case, the petitioner's appeal was quashed by the Pennsylvania Superior Court on October 27, 2003, and, thus, "he was aware that his judgment of sentence was

final and that his time to file a direct appeal had passed." Darden, 477 F. App'x at

917. "At that point, [the petitioner] did not file a federal habeas petition claiming

that extraordinary circumstances reasonably led him to the erroneous belief that

his time to file a federal petition had not yet begun to run." Id. "Instead," the

Third Circuit noted, the petitioner "merely filed a PCRA petition in state court,

which was held to be untimely and, as a result, did not toll his time to file a federal

petition." Id. The petitioner in Darden filed his "federal petition" in

"2009–almost nine years after his initial sentence became final and nearly six

years after he learned that his direct appeal would not be considered timely under

Pennsylvania law." Id. at 917-18. "Thus," the Third Circuit concluded, the

petitioner "was remarkably non-diligent, as he waited to file his federal petition

almost six years after learning that his time to file that petition had run out." Id. at

918.

The Third Circuit continued in Darden by addressing the petitioner's

"defense of his lack of diligence," in which he claimed "that he was in a

'procedural conundrum' not of his making because he was required to exhaust his

state law remedies before filing in federal court." Id. The Third Circuit noted that

"[t]he Supreme Court has rejected this argument." Id. at 917-18 (citing Pace, 544

U.S. at 416). In particular, the Supreme Court stated in Pace that "'[a] prisoner

20

seeking state postconviction relief might avoid this predicament . . . by filing a "protective" petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted.'" Darden, 477 F. App'x at 918 (quoting Pace, 544 U.S. at 416; citing Heleva v. Brooks, 581 F.3d 187, 190-92 (3d Cir. 2009)).  In terms of whether a court should grant a stay when faced with a habeas petition containing unexhausted state claims, the Third Circuit quoted the Supreme Court in Pace for the proposition that "'[a] petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute "good cause" for him to file in federal court.'" Id. (quoting Pace, 544 U.S. at 416).  "Ultimately, therefore," the Third Circuit concluded, the petitioner's "'misunderstanding of the exhaustion requirement is insufficient to excuse his failure to comply with the statute of limitations.'" Id. (quoting Jones, 195 F.3d at 160).  As a result, the Third Circuit found that the petitioner's "lack of due diligence preclude[d] equitable tolling of his federal habeas petition, and absent such tolling, his petition was untimely." Id.

In this matter, as discussed above, Petitioner's AEDPA limitations clock began on May 29, 2007, when the time for Petitioner to file a direct appeal expired.  See (Doc. 17-2, p. 29); Memorandum at p. 2, Ring, No. 1118 MDA 2008; Ring, No. CP-40-CR-4097-2006; 42 Pa. C.S.A. § 9545(b)(3); PA. R. APP. P.

903; Pa. R. Crim. P. 720(A)(3).  That clock was statutorily tolled when Petitioner

timely filed his first PCRA petition on April 9, 2008.  Petitioner's first PCRA

petition was denied and then appealed up to the Pennsylvania Supreme Court.  On

September 9, 2010, the Pennsylvania Supreme Court denied Petitioner's allowance

of appeal concerning his first PCRA petition.  See (Doc. 17-2. p. 36); Order,

Commonwealth v. Ring, No. 305 MAL 2010 (Pa. Sept. 9, 2010).  Therefore, on

September 10, 2010, Petitioner's AEDPA clock re-started.  On March 6, 2015,

over five-and-a-half (5 ½) years after his AEDPA clock re-started, Petitioner filed

his federal petition.  (Doc. 1).  Clearly, such a delay between the restarting of the

AEDPA limitations period and the filing of his federal habeas petition would

render Petitioner non-diligent in his pursuit of habeas relief in federal court.

To the extent that Petitioner is attempting to argue that he is entitled to

equitable tolling of the statute of limitations because he was awaiting resolution of

his second PCRA petition, that claim fails.  Here, according to Petitioner, he filed

the his second PCRA petition on March 25, 2009.  (Doc. 27, p. 5).  On September

23, 2010, he filed a motion to amend that petition, which, according to Petitioner,

was not docketed until November 19, 2010.  (Id.).  On November 1, 2011,

Petitioner claims he filed his amended second PCRA petition and brief in support.

(Id.).  On September 25, 2013, nearly two (2) years after he filed his second

amended PCRA petition, Petitioner claims that he moved the PCRA court to take action on that petition.[3]  (Doc. 27, p. 5).  Thus, over the course of approximately four-and-a-half (4 ½) years, Petitioner made one (1) attempt on record to expedite action concerning his second PCRA petition.  (Id.).  Moreover, he moved to amend that his second PCRA petition one-and-a-half (1 ½ ) years after it was initially filed, he filed an amended second PCRA petition over two-and-a-half (2 ½) years after the initial filling of his second amended petition, and moved for the PCRA court to take action on his amended second PCRA petition approximately four-and-a-half (4 ½) years after filing his initial second PCRA petition.  See (Id.).  Consequently, these circumstances do not establish that Petitioner was diligent in pursuing relief in regards to his second PCRA petition.  See LaCava, 398 F.3d at 272 (21-month failure to inquire about pending appeal not reasonable diligence); McKeithan, 108 F. App'x at 59 (two (2) periods of complete inactivity of four months and six months was not reasonably diligent); see also Williams v. Gilmore,

---

[3]  The Court notes that Petitioner also asserts that on January 5, 2011, he sent a letter to the PCRA court "requesting to get the 2nd PCRA into motion."  (Doc. 27, p. 5).  However, such a letter is not reflected on the PCRA court's docket sheet.  See Commonwealth v. Ring, No. CP-40-CR-4097-2006 (Luzerne Cnty. C.P.).  Nevertheless, even if Petitioner did file such a letter, that effort would be insufficient to establish that he was reasonably diligent in pursuing his second PCRA petition.  Specifically, according to Petitioner, the letter dated January 5, 2011, was sent almost two (2) years after he filed his second PCRA petition.  (Doc. 27, p. 5). Additionally, after he sent this letter, Petitioner then waited approximately one (1) year and nine (9) months to make a second request for action on his second PCRA petition.  (Id.).  Thus, even assuming that Petitioner did file this letter, he has failed to establish that he was reasonably diligent in pursuing his second PCRA petition.

2014 U.S. Dist. LEXIS 128081, at *14 (E.D. Pa. 2014).

Further, even if the Court assumes that Petitioner was diligent, Petitioner would still have to establish that "some extraordinary circumstance stood in his way and prevented timely filing." Holland, 560 U.S. at 649.  The Third Circuit:

> has identified additional circumstances in which equitable tolling is warranted: (1) the defendant has actively misled the plaintiff, (2) the plaintiff has in some extraordinary way been prevented from asserting his rights, (3) the plaintiff has timely asserted his rights mistakenly in the wrong forum, and (4) the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that he had done everything required of him.

Johnson v. Cameron, 2016 U.S. Dist. LEXIS 57807, at *6 (M.D. Pa. May 2, 2016) (Munley, J.) (citing Yanes v. Nish, 2009 U.S. Dist. LEXIS 33289 (M.D. Pa. 2009) (Caldwell, J.)).  "In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstance for equitable tolling."  Fahy, 240 F.3d at 244.  "Nor does equitable tolling extend to claims of excusable neglect."  Shirey, 2014 U.S. Dist. LEXIS 158695, at *15 (citing Irwin v. Dept. of Veterans Affairs, 498 U.S. 89, 96 (1990)).  Importantly, "[p]etitioner bears the burden of demonstrating his entitlement to equitable tolling and his due diligence."  Porter v. Cameron, 2016 U.S. Dist. LEXIS 54621, at * 7 (M.D. Pa. Apr. 26, 2016) (Munley, J.) (citing Pace, 544 U.S.

at 418; Cooper v. Price, 82 F. App'x 258, 260 (3d Cir. 2003)).  Additionally, "[i]n this circuit, for equitable tolling to apply, 'a causal relationship must exist between any extraordinary circumstances and petitioner's failure to file in a timely fashion.'"  Ajamu-Osagboro v. Patrick, 620 F. Supp. 2d 701, 715 (E.D. Pa. 2009) (quoting St. George v. Dist. Attorney of Phila., 2009 U.S. Dist. LEXIS 27447, at *8 (E.D. Pa. 2009)).  Also, the Supreme Court has stated that  "the second prong of the equitable tolling test is met only where the circumstances that caused a litigant's delay are both extraordinary and beyond its control."  Menominee Indian Tribe of Wisconsin v. United States, 136 S. Ct. 750, 756 (2016).

Here, outside of Petitioner's claim that he was diligent, he states that equitable tolling is warranted because of the "delay" in resolving his second PCRA petition.  (Doc. 27, pp. 5-6).  However, the complained of "delay" concerning the disposition of his second PCRA petition was the result of Petitioner's strategic decision to file a second PCRA petition as opposed to pursuing other courses of action.  Thus, that "delay" is not the type of extraordinary circumstance that courts have determined that equitable tolling is warranted because it was Petitioner's strategic decision that caused of the "delay."  See Menominee Indian Tribe of Wisconsin, 136 S. Ct. at 756 ("the second prong of the equitable tolling test is met only where the circumstances that caused a

litigant's delay are both extraordinary and beyond its control."); <u>Christine v. Pennsylvania</u>, 2016 U.S. Dist. LEXIS 148415, at *7-8 (E.D. Pa. Oct. 24, 2016). Thus, Petitioner has not established that he faced extraordinary circumstances beyond his control which prevented him from filing a timely federal petition.  As a result, equitable tolling of his petition is not warranted.  Therefore, Petitioner's habeas petition was untimely filed.

### C.  Actual Innocence Claim Pursuant to McQuiggin v. Perkins

While Petitioner does not expressly cite to nor does he appear to rely on <u>McQuiggin v. Perkins</u>, 133 S. Ct. 1924 (2013), liberally construing Petitioner's <u>pro se</u> filings it is determined that he may be attempting to argue that he is actually innocent, and thus, raise a <u>McQuiggin</u> claim.  <u>See</u> (Doc. 27, pp. 4-5).  However, to the extent that Petitioner requests that the Court entertain his untimely petition because he is actually innocent and, thus, qualifies for the equitable exception established by <u>McQuiggin</u>, <u>see</u> (Docs. 10-11, 27-28); <u>see</u> <u>also</u> (Doc. 27, pp. 4-21), as discussed in more detail below, that claim is also without merit.

In <u>McQuiggin</u>, the United States Supreme Court held "that actual innocence constitutes an equitable exception to the statute of limitations set forth in 28 U.S.C. § 2244(d)." <u>Jones v. Warden Lewisburg USP</u>, 621 F. App'x 103, 105 (3d Cir. 2015) (citing <u>McQuiggin</u>, 133 S. Ct. 1924, 1931-32).  "A claim of actual

innocence, if proved, is 'not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'"  Deneau v. Pennsylvania, 2016 U.S. Dist. LEXIS 16260, at *10 (M.D. Pa. Feb. 10, 2016) (Mannion, J.) (quoting Schlup v. Delo, 513 U.S. 298, 315 (1995)).  "However, the Supreme Court in McQuiggin cautioned that, 'tenable actual-innocence gateway pleas are rare.'"  Id. (quoting McQuiggin, 133 S. Ct. at 1928).

"A habeas petitioner seeking to overcome the one-year statute of limitations in § 2244(d)(1), upon a showing of 'actual innocence', must support his allegations with 'new, reliable evidence' that was not presented at trial" and must demonstrate by a preponderance of the evidence "that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  Id. at *10-11 (quoting Schlup, 513 U.S. at 324-28); see Houck v. Stickman, 625 F.3d 88, 93 (3d Cir. 2010) (quoting Schlup, 513, U.S. at 327). "This exception is limited to 'certain exceptional cases involving a compelling claim of actual innocence.'"  Id. at *11 (quoting House v. Bell, 547 U.S. 518, 521 (2006); citing Schlup, 513 U.S. at 324).  "'Actual innocence' in this context refers to factual innocence and not mere legal sufficiency."  Id. (citing Bousley v. United States, 523 U.S. 614, 623-24 (1998)).  "The Supreme Court emphasized . . . the

demanding nature of the test for permitting the [McQuiggin] gateway to open:

'The gateway should open only when a petition presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."'"

Ross v. Pa. Dep't of Corr., 2016 U.S. Dist. LEXIS 133391, at *8 (M.D. Pa. Sept. 28, 2016) (Mariani, J.) (quoting McQuiggin, 133 S. Ct. 1936).

First, there is the issue concerning the impact of Petitioner's guilty plea on a McQuiggin claim.  As stated, pursuant to a negotiated plea agreement, Petitioner pled guilty to one (1) count of murder in the third degree, 18 Pa. C.S.A. § 2502(c). (Doc. 17-1, pp. 40-41, 84-87).  The trial court, finding that Petitioner knowingly and voluntarily decided to plead guilty, accepted Petitioner's plea.  (Id. at p. 41).

In Vidmosko v. Glunt, it was determined that "equally fatal" to a petition for writ of habeas corpus pursuant to section 2254 was "the fact that [the petitioner] pled guilty to rape by forcible compulsion and admitted under oath that he was guilty of the crime."  2015 U.S. Dist. LEXIS 61771, at *12 (M.D. Pa. 2015) (Conner, J.) (citing Williams v. Holland, 2014 U.S. Dist. LEXIS 48972, at *12-13 (E.D. Ky. Apr. 9, 2014); Sidener v. United States, 2013 U.S. Dist. LEXIS 111699, at *7 (C.D. Ill. Aug. 8, 2013)); see Woldsmit v. Mooney, 2016 U.S. Dist. LEXIS 30269, at *10-11 n.2 (E.D. Pa. Mar. 8, 2016) (citing Vidmosko, 2015 U.S. Dist.

LEXIS 61771, at *12; <u>Williams</u>, 2014 U.S. Dist. LEXIS 48972, at *12-13;

<u>Sidener</u>, 2013 U.S. Dist. LEXIS 111699, at *7); <u>Teal v. Quintana</u>, 2014 U.S. Dist.

LEXIS 125720, at *11-12 (E.D. Ky. 2014).  In <u>Ross</u>, it was noted that "'[e]ven

more compelling is that [the petitioner] pled guilty to possession of an unlicensed

firearm and reckless endangerment, and admitted under oath that he was guilty of

these crimes." <u>Ross</u>, 2016 U.S. Dist. LEXIS 133391, at *10.  As a result, it was

determined that "he cannot now claim actual innocence to invalidate his guilty

plea." <u>Id.</u> (citing <u>Williams</u>, 2014 U.S. Dist. LEXIS 48972; <u>Sidener</u>, 2013 U.S.

Dist. LEXIS 111699).

Other district courts have determined that a petitioner that entered into a

voluntary and knowing guilty plea waives a <u>McQuiggin</u> claim.  <u>See</u> <u>Davis v.</u>

<u>Stephens</u>, 2016 U.S. Dist. LEXIS 62152, at *7 (N.D. Tex. May 11, 2016); <u>Cantu v.</u>

<u>Stephens</u>, 2014 U.S. Dist. LEXIS 120036, at *5 (W.D. Tex. 2014) (the petitioner's

"guilty plea waives his allegation that he is 'actually innocent'"); <u>Jackson v. U.S.</u>,

2013 U.S. Dist. LEXIS 133469, at *7 (E.D. Wisc. 2013) (citing <u>Sidener</u>, 2013 U.S.

Dist. LEXIS 111699; <u>U.S. v. Cunningham</u>, 2013 U.S. Dist. LEXIS 105530 (S.D.

Tex. 2013)).

Notably, however, some courts have found that a plea is "not an absolute

bar to an actual innocence claim . . . ." <u>Ryburn v. Ramos</u>, 2014 U.S. Dist. LEXIS

1204, at *9-10 (C.D. Ill. 2014) (citing Bousley, 523 U.S. at 623-24).  Rather,

"pleading guilty to a crime certainly makes it difficult for a court to conclude it is

likely no reasonable juror would find the petitioner guilty beyond a reasonable

doubt of the very crime to which he plead." Ramos, 2014 U.S. Dist. LEXIS 1204,

at *10.  Further, according to the United States Court of Appeals for the Tenth

Circuit, a knowing plea undercuts the reliability of an actual innocence claim as

opposed to barring such a claim outright.  U.S. v. Tatum, 2014 U.S. Dist. LEXIS

159077, at *7-8 (D. Kan. 2014) (citing O'Bryant v. Oklahoma, 568 F. App'x 632,

637 (10th Cir. 2014); Johnson v. Medina, 547 F. App'x 880, 885 (10th Cir. 2013);

Battle v. New Mexico, 546 F. App'x 789, 791 (10th Cir. 2013)).

Nevertheless, "even if McQuiggin applies in the context of a guilty plea, a

point which is by no means clear," Watson-Buisson v. Cain, 2016 U.S. Dist.

LEXIS 118742, at *19-20 n.81 (E.D. La. Sept. 1, 2016) (quoting Kennedy v.

Tanner, 2015 U.S. Dist. LEXIS 50935, at *5 (E.D. La. 2015)), as discussed below,

Petitioner fails to establish that he is entitled to the equitable exception created by

McQuiggin.

As stated, to succeed on a McQuiggin claim, a petitioner needs to present

"new" evidence of his actual innocence.  See Deneau, 2016 U.S. Dist. LEXIS

16260, at *10.  "In the Third Circuit, evidence is 'new' for the purposes of the

<u>Schlup</u> standard only if it was not available at the time of trial and could not have been discovered earlier through the exercise of due diligence,[footnote omitted] except in situations where that evidence was not discovered due to the ineffective assistance of trial counsel." <u>Puller v. Pierce</u>, 2016 U.S. Dist. LEXIS 64009, at *7 (D. Del. May 16, 2016) (quoting <u>Houck v. Stickman</u>, 625 F.3d 88, 93-94 (3d Cir. 2010)).

Here, Petitioner claims that his counsel was ineffective, and, as a result, he was unable to provide a valid plea. Specifically, he argues that his trial attorneys provided him with their lay interpretation of the autopsy report, which Petitioner claims was inaccurate. (Doc. 27, p. 13). In particular, Petitioner argues that his trial counsel failed "to properly inform [him] of bullet wound locations." (<u>Id.</u> at p. 12). According to Petitioner, his trial counsel told him "that there were two bullet wounds to [the victim's] back," and that such statements were "erroneous or deceptive in that [the trial counsel's] lay interpretation of the autopsy report was misplaced." (<u>Id.</u>). Petitioner claims that he accepted this interpretation of the autopsy report from his trial counsel and their advice that "a jury would then find legal malice . . . ." (<u>Id.</u>). As a result, Petitioner contends, his trial counsel's "inaccurate information contributed to influence [him] to accept the plea deal." (<u>Id.</u> at p. 13).

Petitioner continues by stating that "[t]he autopsy report establishes that of 3 bullet wounds, 1 struck in the center of the chest and traversed the left side not entering the chest cavity and exited, grazing soft tissue of left upper arm; the 2nd struck in the left shoulder and traveled to the right shoulder; the 3rd struck in the back." (Doc. 27, p. 13). He "submits the trajectory is consistent with [the victim] about to strike [Petitioner] with the spindle in his right hand then twisting quickly to the right upon being shot." (Id.).

As admitted by Petitioner, he and his trial counsel were aware of the autopsy report prior to entering into his guilty plea. (Id.). Further, Frank Nocito who, along with Joseph Nocito, represented Petitioner in his criminal case, testified at a hearing concerning Petitioner's first PCRA petition that he showed Petitioner a picture of the victim which depicted two (2) bullet wounds in the victim's back. (Doc. 17-1, p. 75). In particular, Frank Nocito testified that "[t]here was also a photograph with two bullet wounds in Mr. Taretto's back." (Id.).

"Evidence is not 'new' if it was available at trial." Ross, 2016 U.S. Dist. LEXIS 133391, at *9 (citing Hubbard v. Pinchak, 378 F.3d 333, 338 (3d Cir. 2004)). Thus, the autopsy report central to Petitioner's actual innocence claim is not "new" evidence. See Delgado v. Pennsylvania, 2015 U.S. Dist. LEXIS

127322, at *8 (E.D. Pa. 2015) (citing <u>Johnson v. Medina</u>, 547 F. App'x 880, 885

(10th Cir. 2013) (noting that evidence that existed before petitioner's guilty plea

was not "new evidence," even though petitioner claimed that his plea counsel

failed to investigate and/or properly present it to or discuss it with him)).

Further, even if the Court were to find that the autopsy report is "new"

evidence, Petitioner's actual innocence claim would still fail to establish that he is

entitled to the exception in <u>McQuiggin</u>.  In particular, the substance of the autopsy

report does not rise to the level of evidence that would establish that Petitioner is

entitled to avail himself of the equitable exception established by <u>McQuiggin</u>.

Rather, the autopsy report appears to contradict Petitioner's claim that only one (1)

wound originated in the victim's back.  Specifically, the report states that the

second wound was "[o]n the left upper back" and the third wound was "[o]n the

left lower back."  (Doc. 28, p. 10).  Thus, clearly, this report does not rise to the

level of "new" evidence that is so strong that the Court could not have confidence

in the outcome of the state proceedings.  As a result, Petitioner's reliance on the

autopsy report fails to establish that he is entitled to the application of the

equitable exception created by <u>McQuiggin</u>.

Petitioner also argues that "DNA testing/forensic analysis of potentially

exculpatory evidence, ie., the wooden spindle, has been opposed by [the

Commonwealth] and denied by the lower court." (Doc. 27, p. 14).  According to

Petitioner, "DNA testing may show a reasonable likelihood [the victim] did have

possession of the spindle, thereby negating the malice element and giving support

to [Petitioner's] self-defense assertions."  (Id.).

First, there is a serious question as to whether DNA testing of the "wooden

spindle" would be considered "new" evidence.  Specifically, on February 27,

2007, the Pennsylvania State Police Bureau of Forensic Services completed a

DNA Analysis of, inter alia, a stain on the "wooden spindle."  See (Doc. 28, p.

17).  According to the results of that DNA analysis, the stain on the "wooden

spindle" matched "[t]he DNA profile obtained from the blood sample from Joseph

Tarreto . . . ."  (Id.).  Notably, Petitioner claims that this report was withheld from

him by both his trial counsel and the Commonwealth.  See (Doc. 10, pp. 6, 8);

(Doc. 11, pp. 2, 5-6).  However, Joseph Nocito testified at a hearing concerning

Petitioner's first PCRA petition that Petitioner was informed about "the laboratory

reports."  (Doc. 17-1, p. 70).  Further, Joseph Nocito also testified that "I'm sure

we provided him with a copy of them, as well."  (Id.).  Moreover, Petitioner could

have testified at trial that the victim was in possession of the wooden spindle.[4]

---

[4]  The United States Court of Appeals for the Third Circuit has stated that "[e]vidence is not new if it was available at trial, but a petitioner merely chose not to present it to the jury." Goldblum v. Klem, 510 F.3d 204, 226 (3d Cir. 2007).

Thus, the "DNA testing/forensic analysis" of the "wooden spindle" sought by Petitioner would not constitute "new" evidence for purposes of a <u>McQuiggin</u> claim.

Second, assuming, without deciding, that the "DNA testing/forensic analysis" of the "wooden spindle" is "new," this evidence fails to rise to the level required to obtain relief under <u>McQuiggin</u>.  In particular, even if the victim was in possession of the "wooden spindle" prior to the shooting in question, such evidence would only go to legal sufficiency as opposed to factual innocence. According to Petitioner, the victim's possession of the "wooden spindle" would merely give "support" to his claim of self-defense.  (Doc. 27, p. 14).  Thus, even if this "DNA testing/forensic analysis" of the "wooden spindle" established what Petitioner contends, and such evidence is "new," that evidence  does not rise to the level that would make it more likely than not that no reasonable juror would convict the Petitioner.  <u>See</u> <u>Ross</u>, 2016 U.S. Dist. LEXIS 133391, at *9-10; <u>see also</u> <u>Commonwealth v. Ring</u>, No. 1238 MDA 2015, at p. 14 (Pa. Super. Ct. Apr. 28, 2016) ("Given the circumstances, we discern no indication in the record that Touch DNA evidence would have made it 'more likely than not that no reasonable juror would have found Appellant guilty beyond a reasonable doubt.'"). Therefore, to the extent that Petitioner attempts to avail himself of the equitable

exception established by McQuiggin, such a claim is without merit.

## III.    CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a

certificate of appealability ("COA"), an appeal may not be taken from a final order

in a proceeding under 28 U.S.C. § 2254.  A COA may issue only if the applicant

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. §

2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of

reason could disagree with the district court's resolution of his constitutional

claims or that jurists could conclude the issues presented are adequate to deserve

encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327

(2003) (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)).  Here, there is no

basis for the issuance of a COA.  Accordingly, no COA will issue.

"The denial of a [COA] does not prevent [Petitioner] from appealing the

order dismissing his petition so long as he seeks, and obtains, a [COA] from the

court of appeals."  Martz v. Mooney, 2016 U.S. Dist. LEXIS 59078, at *33 (M.D.

Pa. May 4, 2016) (Munley, J.) (citing Fed. R. App. P. 22(b)(1), (2)).

## IV.    CONCLUSION

Based on the foregoing, the petition for habeas corpus, (Doc. 10), will be

dismissed as untimely under 28 U.S.C. § 2244(d).  Further, a COA will not issue.

A separate Order will be issued.

**Date**: December 14, 2016                    /s/ William J. Nealon
                                               **United States District Judge**